311 So.2d 830 (1975)
Julio AMOEDO, Appellant,
v.
Carios Prio SOCARRAS, Appellee.
No. 74-773.
District Court of Appeal of Florida, Third District.
April 22, 1975.
Rehearing Denied May 16, 1975.
Noriega & Bartel and Bill Shuford, Jr., Miami, for appellant.
Horton, Perse & Ginsberg, Miami, for appellee.
Before PEARSON and NATHAN, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
In his first count, the plaintiff claimed recovery on an unpaid promissory note and defendant's guarantee of payment. His second count claimed damages for breach of an agreement by the defendant to purchase certain stock. At trial, the plaintiff was permitted to amend his complaint to conform to the evidence to allege a novation of the promissory note and guaranty. The plaintiff received a verdict on both counts. Upon the motion of the defendant for judgment in accordance with his motion for directed verdict, the trial judge set aside the jury verdict and entered judgment for the defendant. The plaintiff appeals that judgment. We reverse upon a holding that there was, in fact, properly submitted to the jury the issue of whether *831 there existed a novation by virtue of the substitution of a second agreement which the defendant breached.
The following facts appear in this record and must be taken as admitted upon defendant's motion for a directed verdict. See Darr v. Aglin, Fla.App. 1973, 279 So.2d 62. The note sued upon was made and delivered for good consideration on April 26, 1965. The defendant guaranteed the note as a co-maker on October 1965. The plaintiff later notified defendant that in default of any payment, he would call the note for payment in full. In 1969, an initial principal repayment of $25,000.00 was made to the plaintiff. In 1970, three post-dated checks, each for $25,000.00, were delivered to the plaintiff. The first of these checks failed to clear because of insufficient funds on the date of deposit. In a telephone conversation with the plaintiff, the defendant agreed to pay the first of the three post-dated checks immediately. This was done. In addition, the defendant agreed to cover the remaining post-dated checks so that the second post-dated check would be deposited and paid on August 1, 1970, and the third post-dated check would be collected on December 1, 1970. Defendant wrote plaintiff a letter, dated April 17, 1970, setting forth this plan for payment. In addition, the defendant agreed by letter to repurchase defendant's stock in the debtor corporation for $40,000.00 in consideration of plaintiff's forbearance and in consideration of the fact that he had received no interest payments although such was provided for by the note.
The plaintiff ceased his efforts to collect the indebtedness in reliance on this agreement and delivered his stock endorsed in blank to a bank as escrow agent. The plaintiff wrote the defendant a letter about two months after the claimed oral agreement. This letter, dated June 11, 1970, was the basis of the trial judge's holding. It is, in material portion, as follows:
"After my telephone conversation with you I answer yours [letter] of April 17 of the current [year], in which you formulate to me a proposal regarding the matter of Puerto Rico.
"Once more in honor of a friendship of many years and because it refers to you, I am going to accept it with the following variants:
"I  Accepting that the checks that were dated March 1 and May 1 subscribed by Altomar be both put to my credit on the date of next August 1, since after my conversation with Garrigos it is the maximum day of payment that the Pan American Bank grants me on said checks.
"II  The sum of $40,000 that according with the agreement with Rene would be put to my credit at the rate of $1,500 a month and that you ratify in your letter with the tardiness of seven months in the mailing of that sum, the term I accepted of three years is going on four.
"For that reason I desire that I be reimbursed said tardy monthly amounts and that I be sent regularly the sum of $1,500 monthly that we have agreed upon."
The first post-dated check was paid. The second and third post-dated checks were deposited but were not paid. The defendant declined to deliver replacement checks for the stale post-dated checks. Therefore, payment of $50,000.00 of the principal upon the loan was not made and the interest thereon was not paid. The defendant failed to meet any of the monthly $1,500.00 installment payments agreed upon for the stock repurchase.
It was, and is, plaintiff's position that an agreement as to the $75,000 balance and unpaid interest was reached orally and that it was acted upon but that the defendant failed to perform at any time as to the $50,000.00 balance and the agreed repurchase of stock. It was, and is, defendant's position that a proposal for postponed payment was made by him in his letter of April 17th but that it was rejected by *832 plaintiff's letter of June 11th because that letter attempted to accelerate the payment dates in order to avoid the stale check situation on the last proposed payment. The jury was fully instructed upon the law and the issue of novation. The verdict was for the plaintiff. The trial judge entered judgment for the defendant finding that "... as a matter of law, there was no binding or enforceable contract of novation ..."
The controlling principle has been set forth by the Supreme Court of Florida in Lakeland Silex Brick Co. v. Jackson & Church Co., 124 Fla. 347, 168 So. 411 (1936), where the court stated:
"The question of novation is controlled by the intention of the parties, and is a proper question to be submitted and determined by the jury after considering the evidence"
In this connection, it should be noted, as pointed out in the cited case, that the question of the existence of a novation is controlled by the intention of the parties. See also Moses v. Woodward, 109 Fla. 348, 140 So. 651, 141 So. 117, 147 So. 690 (1933). The intention of the parties may be implied from the facts and circumstances attending the transaction and the conduct of the parties. Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284 (1935). We conclude, therefore, that there was sufficient evidence that there was, in fact, an agreement of novation for the issue to be decided by the jury.
One other point presented must be briefly discussed. The complaint was in two counts: (1) for the recovery of the $50,000.00 due upon the guarantee of the note, and (2) for the recovery of the $40,000.00 due upon the agreement to repurchase the stock. At trial, where there was extensive evidence of the agreement to postpone payment upon the issuance of the post-dated checks, the plaintiff was permitted to amend in order to allege the existence of the new agreement. At the close of his case, plaintiff was under coercion of a directed verdict and at that stage was required to elect whether to proceed upon the original indebtedness or the new promise. This requirement that he elect the theory upon which he would proceed is presented as error on this appeal. The point is moot at this time but we would hold the requirement of an election to be reversible error. See RCP 1.110(g); Hines v. Trager Construction Co., Fla.App. 1966, 188 So.2d 826; Vann v. Hobbs, Fla.App. 1967, 197 So.2d 43.
The judgment appealed is reversed and the cause is remanded with directions to enter judgment for the plaintiff upon the jury verdict.
Reversed and remanded.